EMMA PEARNE vs. JAMES J. COYNE ET AL.

Third Judicial District, New Haven, January Term, 1907.

BALDWIN, HAMERSLEY, HALL, PRENTICE and REED, Js.

Pending an attachment of the interest of the vendee in a piano sold on condition, the vendor assigned his title and interest therein, and his rights under the contract, to the attaching creditors, and the latter thereafter rested their title to the piano, and their right to its possession, upon the assignment, and not upon their attachment which was subsequently dissolved. In an action in the nature of trover brought by the vendee against the attaching creditors and assignees, it was *held*:—

1. That inasmuch as the vendee's obligation to pay the stipulated instalments of the purchase price was conditioned upon her right to possess and use the piano, the defendants, in their capacity as assignees of the vendor, could not require the plaintiff to continue the partial payments, nor enforce a forfeiture against her for her failure to make them, until they had restored to her the possession of the piano and the right of its enjoyment,—rights to which she was entitled by the express terms of the contract of conditional sale.

2. That as attaching creditors the defendants succeeded only to the rights of the conditional vendee, and acquired no rights whatever belonging to the vendor; and therefore could not compel the vendee to continue to perform the conditions of the sale, nor enforce a forfeiture against her because of her nonperformance.

3. That the defendants could not take advantage of any defaults on the part of the vendee which occurred prior to the assignment and which had been waived by the vendor.

Error in instructing a jury that the measure of damages for conversion is the value of the chattel on a certain date, when it should have been the value on a different date, is not cause for a new trial unless it appears that there was a material difference in value on the two dates.

Argued January 16th—decided March 6th, 1907.

ACTION to recover damages for the alleged conversion of a piano, brought to the District Court of Waterbury and tried to the jury before *Peasley, Deputy-Judge ;* verdict and judgment for the plaintiff for $259, and appeal by the defendants. *No error.*

*George E. Beers* and *Carl A. Mears*, with whom was *Ulysses G. Church*, for the appellants (defendants).

*Howard C. Webb* and *John Cassidy*, for the appellee (plaintiff)..

HALL, J.    This action was commenced September 2d, 1904.    Upon the trial to the jury in March, 1906, the plaintiff offered evidence to prove the following facts:—

On the 25th of June, 1900, the plaintiff purchased of the Treat & Shepard Company, piano dealers of New Haven, a piano, under a contract of conditional sale, by the terms of which the plaintiff was to pay for it $325, $10 upon delivery of the piano and the remainder in $5 payments on the 25th of each month, with interest on overdue instalments.    She was not to remove the piano from her then residence without the written consent of the vendors; was to keep it insured for the benefit of the vendors; and upon default in any of said payments was to return the piano to the vendors upon demand.    In default of any payment, the entire purchase price was to become due at the option of the vendors, and the vendors might, upon such default, enter the vendee's premises and remove the piano, and the payments already made were to be considered as rental.    Until the purchase price was fully paid the title to the piano was to remain in the vendors.

On the 8th of June, 1904, while the piano was in the possession of the plaintiff under said contract, the defendant Coyne caused it to be attached and taken from her possession by the defendant Carmody, a constable, under a writ of attachment returnable before a justice of the peace on the 21st of June, 1904, in a suit by said Coyne against the plaintiff and her husband, demanding $100 damages.

At the time of such attachment the plaintiff had paid $230 of the purchase price of the piano, the last instalment due having been paid June 2d, 1904; and that and previous payments had been received by the vendors without any claim of forfeiture or default.

After the attachment was made said vendors notified the defendants that they owned the piano, and ordered it returned to the plaintiff, and promised the plaintiff that they would claim no default while the piano was out of her possession under such attachment. Thereupon, on the 9th of July, 1904, the defendant Coyne paid to said vendors, the Treat & Shepard Company, $98, the balance due them under said contract, and said vendors assigned to Coyne all their right, title and interest in the piano and under said contract.

On the 30th of said July, Coyne notified the plaintiff that he had rescinded the contract between her and the vendors, the Treat & Shepard Company, on account of her failure to pay the instalment due thereunder on the 25th of said July, and that he had taken the piano into his possession as his property; and at the same time notified the defendant Carmody to release the attachment upon the piano and to hold the piano as Coyne's agent, and Carmody thereafter claimed to hold the piano as the agent of Coyne, and free from the attachment.

On August 1st, 1904, the plaintiff applied under the statute (§ 849) for the dissolution of the attachment on the piano, by the substitution of a bond, and this application, after a full hearing, was granted, and a bond substituted, and the attachment on the piano dissolved on the 17th of said August. The plaintiff thereupon offered to pay the instalments due, and demanded possession of the piano, which the defendants refused.

The plaintiff sent to Coyne $5 on the 22d of August, 1904, and $5 on the 23d of September, 1904, which was received by him and not returned.

The plaintiff's interest in the piano has never been appraised or sold on execution.

In so far as the questions raised by the defendants' demurrer to the complaint are concerned, the above are substantially the facts alleged in the complaint.

The record states that the defendants claimed to have shown at the trial that on June 8th, 1904, they attached

the plaintiff's interest in the piano under § 834 of the General Statutes, and held it under such attachment until July 9th following, when the Treat & Shepard Company assigned their interest in the piano to Coyne, of which assignment notice was given to the plaintiff; that thereafter they held it on account of Coyne's ownership of it by such assignment, and by having acquired the plaintiff's interest by reason of her forfeiture through her failure to make the payment due July 25th, 1904; and that Coyne attempted to return to the plaintiff the payments made by her to him in August and September, 1904, but failed to do so.

As affecting the questions of law decisive of the case, there is no material difference in the facts as they are claimed by the plaintiff and as they are claimed by the defendants.

Seventeen of the errors assigned in the appeal are predicated upon the refusal of the court to charge the jury in accordance with as many written requests filed by the defendants; some forty-five reasons of appeal are based upon the charge as delivered; and the remaining nineteen upon other grounds, including the overruling of the defendants' demurrer to the complaint, and the refusal of the court to correct the finding.

We shall have occasion to refer specifically to but two or three of the unnecessarily numerous questions so presented.

The defendants' demurrer to the complaint was rightly overruled. Practically the same questions raised by the demurrer are considered in discussing the case as afterward presented upon the evidence.

Upon the undisputed facts in the case the plaintiff was entitled to the possession of the piano, after the defendants' attachment was dissolved on the 17th of August, 1904, unless by said previous failure to perform the conditions of the contract of conditional sale she had forfeited that right.

In their claims to the trial court after the evidence had been presented, and in their requests to charge, the only default of the plaintiff under the contract, which the de-

fendants claimed had been shown, was her failure to pay the instalment due on the 25th of July, 1904. It is true that the answer alleges that prior to that date the plaintiff had broken the contract by removing the piano, and by failing to keep it insured, and by failing to pay interest on overdue instalments. But neither a removal of the piano by the plaintiff when changing her residence, nor a failure to insure it, are made grounds of forfeiture by the contract; nor could the defendants compel a forfeiture by the plaintiff of her right to keep possession and acquire title to the piano upon paying the balance of the purchase price, because of any failure on her part to pay to the original vendors any instalment on the day it fell due, or any interest on any overdue instalment payment of which instalments on such day had been waived by the vendors. If, therefore, there ever were any defaults by the plaintiff previous to July 9th, it is perfectly clear from the unquestioned facts that the defendants never had, on account of such defaults, any right whatever to enforce against the plaintiff a forfeiture of her right to acquire title to the piano by paying the balance due on the purchase price.

The plaintiff's alleged default, then, by reason of which she is said to have forfeited all rights under the contract, was her failure to pay the July 25th instalment. Not her failure to pay it to the Treat & Shepard Company, who had before that assigned their contract to the defendants, but her failure to pay it to the defendant Coyne, or to his agent, the defendant Carmody; and further, the defendants' claim, that they had the right to require the plaintiff to make the July 25th payment, and to enforce a forfeiture against her because she failed to pay it, is apparently based entirely upon their ownership of the piano, and of the vendors' rights under the contract, by virtue of the assignment of July 9th, 1904, and not upon any rights acquired by them under their attachment. In fact, as we have said, the defendants' claim at the trial was that they held the piano under the attachment only until July 9th, and thereafter only under the assignment.

But the defendants acquired no such rights, either under the assignment or the attachment, as enabled them to enforce a forfeiture of the plaintiff's rights under the contract of sale by reason of her failure to pay the instalment of July 25th, 1904.

Regarding the defendants as holding the piano after July 9th only as assignees of the contract of conditional sale, as they say they did, they had no greater power to enforce a forfeiture of the plaintiff's rights than their assignors would have had, had there been no assignment. A very material condition to the right of the vendors to compel payment of the monthly instalments under the contract, was that the plaintiff should have the possession and right to use the piano. If the Treat & Shepard Company had taken the piano from the plaintiff before any default on her part, until they had restored to her the possession and right of enjoyment of the property which she was entitled to by the express terms of the agreement, they could not have enforced a forfeiture of her rights because of her failure to pay future instalments. To enable the defendants, as assignees, to exercise the rights given to their assignors by the contract assigned, they were required to first perform the duties imposed by the same contract upon their assignors. While having no other interest in the piano than that of assignees of the contract, they had no right to require payment of the July instalment until they had restored possession of the piano to the plaintiff.

But if we regard the attachment as in force until it was dissolved in August, neither Coyne, as an attaching creditor or as assignee of the contract, nor Carmody, as an officer or as Coyne's agent, possessed the power to require the plaintiff to pay the instalment due July 25th, or to enforce a forfeiture of the plaintiff's rights under the contract of sale, upon her failure to make that payment, or the right to retain possession of the piano after the attachment was dissolved in August.

Section 834 of the General Statutes, under which the attachment was made, provides that "any property sold

upon condition and put by the vendor into the visible possession of the vendee . . . may be attached and levied upon and sold or set out on execution in any suit against such vendee, subject to the rights of the vendor to its possession or ownership "; that "the party attaching or levying shall have the same rights which *the vendee would otherwise have had to tender to the vendor performance of the conditions of sale" ;* and that "all parties deriving title under the execution shall succeed to all the rights of the vendee in relation to such property."

Under this statute the attaching creditor acquires the rights of the vendee, not those of the vendor. Having taken the property from the possession of the vendee, the attaching creditor cannot, for his own benefit, require the vendee to continue to perform the conditions of the sale, by paying either to him or to the vendor the instalments of the purchase price as they fall due under the contract, even though the vendor, who is not a party to the attachment, may still be able to enforce the performance by the vendee of such conditions. Nor does the statute give to the attaching creditor, whether or not he pays such instalments to the vendor, the power, given by the contract of sale to the vendor, of enforcing a forfeiture of the vendee's rights on account of the latter's failure to make such payments. It is the duty of the person attaching property sold on condition to perform the conditions of the sale. It is only those desiring to avail themselves of the privilege of performing the conditions of such sales who are permitted by the statute to attach such property. .

The defendant Coyne, regarding him only as an attaching creditor, performed, and doubtless intended to perform, the conditions of the sale to the plaintiff, when, on July 9th, 1904, he paid to the Treat & Shepard Company not only the July 25th instalment but the entire unpaid balance of the purchase price, and took from them what he claims was an assignment to him of all their rights under the contract. If by his payment to the Treat & Shepard Company he is to be regarded as not having performed the remaining

conditions of the sale, but as having merely purchased their interest in the piano and in the contract, with the view of continuing the attachment in force, he must be presumed to have performed the duties which, as attaching creditor, he owed to himself as assignee, of paying the instalments of the purchase price as they fell due. Had the attachment been continued in force, and the piano been sold on execution, it would have been sold subject to the terms and conditions of the original contract of conditional sale.

If he chose, however, to abandon his attachment, as he says he did, and depend for the recovery of the sum he had paid the vendors, upon his rights as assignee, he had only the rights of his assignors, namely, of restoring the piano to the possession of the vendee and enforcing payment of the instalments as they became due in accordance with the provisions of the contract of sale.

And furthermore, if, upon the plaintiff's application under the statute, the attachment of the piano was dissolved on the 17th of August, 1904, as it seems to be unquestioned that it was, and a bond was substituted therefor, presumably of an amount equal to the value of the piano, the defendants had thereafter no right whatever, growing out of the attachment, to retain possession of the piano.

Of the defendants' claim that the court erred in instructing the jury that the rule of damages was the value of the piano on the 8th of June, 1904, instead of on the 17th of the following August, less the amount of the payments due on it, it is sufficient to say that it does not appear that there was any material difference in the value of the piano on said dates.

Upon the facts as claimed by the defendants, Carmody held the piano as the agent of Coyne. The verdict was therefore properly rendered against both defendants.

It would be unprofitable to discuss or even to state the numerous questions which the defendants made in the trial court and have endeavored to present by this appeal. We need only say of them that neither in the rulings upon evi-

dence as shown by Exhibit F, which was added to the finding upon the appellants' application to rectify, nor in the refusals to charge as requested by the defendants, nor in the charge to the jury as given, do we find any error which entitles either of the defendants to a new trial; and that upon the facts as claimed by the defendants we are satisfied that no materially different conclusion from that complained of could properly be reached in the case, excepting, possibly, upon the question of the value of the property at the time of the conversion, which was fairly submitted to the jury upon the conflicting evidence upon that subject.

There is no error.

In this opinion the other judges concurred.